AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

**FILED**
May 01, 2025
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____vp_____
DEPUTY

| United States of America | ) |
|---|---|
| v. | ) |
| (1) Albert Delgado | ) Case No. SA-25-MJ-692 |
| (2) Hector Fuentez | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  April 1, 2025 to on or about May 1, 2025  in the county of  BEXAR  in the
WESTERN  District of  TEXAS  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 933 | Trafficking in Firearms |
| | Penalties: Up to 15 years imprisonment; a fine up to $250,000, or both such fine and imprisonment; mandatory $100 special assessment; and, maximum 3 years supervised release |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT

☒ Continued on the attached sheet.

**DANIEL HUBER**
Digitally signed by DANIEL HUBER
Date: 2025.05.01 16:13:07 -05'00'

*Complainant's signature*

Daniel Huber, Special Agent, ATF
*Printed name and title*

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date: May 1, 2025

*Judge's signature*

City and state:  San Antonio, Texas    RICHARD B. FARRER, U.S. MAGISTRATE JUDGE
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT**

I, Special Agent Daniel Huber, being duly sworn do hereby depose and state:

1. Your Affiant is currently employed as a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), where I have worked since March of 2022. I am assigned to San Antonio Group 1, which investigates gang related crimes including robberies along with the illegal sale, use, or possession of firearms. I have assisted in numerous investigations that have led to convictions in both state and federal court. Since November 2022, your affiant has participated in investigations concerning violations of Title 18 and Title 26 of the United States Code, including offenses pertaining to the illegal possession of firearms.

2. I make this Affidavit, in part, based on my personal observation, experience, training; my personal knowledge gathered during my participation in this investigation; information conveyed to me by other law enforcement officers and witnesses involved in this investigation, either personally in conversation or through their reports; my review of physical evidence obtained during the investigation; and my review of records obtained during this investigation. This affidavit is submitted for the limited purpose of establishing probable cause, and it does *not* include each fact of this investigation.

3. Based on the facts set forth herein, I submit that there is probable cause to believe that between April 1, 2025 and May 1, 2025, in the Western District of Texas, Defendants **Albert DELGADO (DELGADO)** and **Hector FUENTEZ (FUENTEZ)** conspired together to traffic firearms in violation of 18 U.S.C. § 933.

**FACTS SUPPORTING PROBABLE CAUSE**

4. Law enforcement learned **DELGADO** and **FUENTEZ** were both in possession of and trafficking firearms, to include stolen firearms and machine guns, through social media. The machine guns were in the form of machinegun conversion devices

1

(MCDs) known as "Glock switches" and firearms that have been converted into machineguns by attaching an MCD in the form of a Glock switch. The sole purpose of the machine gun conversion device such as a "Glock switch" is to convert a semi-automatic firearm into a fully-automatic machinegun. Firearms with an attached machinegun conversion device, as well as stand-alone machinegun conversion devices, are both considered to be machineguns under federal law. *See* 26 U.S.C. § 5845(b) (defining "machinegun"). The possession of machineguns in either of these forms is generally prohibited by Federal law. *See* 18 U.S.C. § 922(o); *see also* 26 U.S.C. § 5845(b) (defining "machinegun").

5. On or about the week of April 1, 2025, an Undercover Agent (UC) communicated over social media and text message with **DELGADO**. Over the communication, the UC told **DELGADO** he wished to purchase firearms and intended to bring them to Mexico. **DELGADO** agreed to sell the UC one Glock pistol with an MCD device. On or about April 8, 2025, UC and **DELGADO** met. Three males arrived during the deal. Two remained inside the vehicle while **DELGADO** met with the UC. The UC purchased two Glock pistols and a blue in color MCD "Glock Switch" device in exchange for $1,900. The UC expressed during the meet that the UC intended to bring the firearms to Mexico that night. Of note, a query of the purchased firearm serial numbers revealed one pistol was reported stolen in San Antonio, Texas.

6. During the week of April 14, 2025, **DELGADO** messaged the UC and agreed to sell additional firearms. The two agreed to meet on or about April 15, 2025. Prior to the meet, **DELGADO** said he needed to go to three separate locations to pick up three firearms he intended to sell to the UC. Surveillance followed **DELGADO** to 223 Ceralvo Street, San Antonio, Texas. The residence is the home of **FUENTEZ.** Surveillance observed a male matching **FUENTEZ'** description exit the residence and go into **DELGADO's** vehicle. Around the same time, **DELGADO** told the UC he had just picked up the Glock 29 pistol he intended to sell the UC. Further, investigators previously observed a post on a Facebook account identified through the investigation as belonging to **FUENTEZ**. On April 14, 2025, **FUENTEZ** advertised what appeared to be the same unique green camouflage Glock 29 10mm pistol for sale.

7. During the meet on April 15, 2025, investigators identified **FUENTEZ** as being the front passenger in **DELGADO's** vehicle. **DELGADO** met the UC and sold two Glock pistols in exchange for $1,400.00. The UC again told **DELGADO** he would bring the firearms down to Mexico later that day.

8. During the week of April 21, 2025, **DELGADO** said he was willing to sell a "bulk" order of 11 firearms to the UC. The UC said he was in Mexico, but he would send a "driver" to purchase the firearms. Leading up to the deal, investigators observed **FUENTEZ** and **DELGADO** independently post over social media the 11 firearms which **DELGADO** told the UC he would sell to him.

9. As the UC and **DELGADO** continued messaging regarding the meet for the 11 firearms, the UC again told **DELGADO** he would be bringing the firearms to Mexico. The two agreed to meet on April 22, 2025. Prior to the meet, investigators observed **DELGADO** and **FUENTEZ** in front of **DELGADO's** residence. Investigators watched as **DELGADO** and **FUENTEZ** wrapped multiple firearms in a sheet and placed them in **DELGADO's** vehicle. **DELGADO** and **FUENTEZ** both went to meet with the UC together. The UC paid **DELGADO** $6,000 in exchange for 11 firearms. The UC observed **DELGADO** and **FUENTEZ** count the money together after the money was exchanged. A query of the purchased firearm serial numbers revealed three firearms were reported stolen in NCIC.

10. Also on the week of April 21, 2025, an ATF UC spoke with **FUENTEZ** over social media and text messaging. The UC told **FUENTEZ** he would take the firearms to Mexico. **FUENTEZ** agreed to meet the UC on April 23, 2025, to sell five firearms. On April 23, 2025, investigators observed **DELGADO** pick up **FUENTEZ** prior to the deal. Investigators observed social media posts on **DELGADO's** Instagram account and **FUENTEZ'** Instagram account. **DELGADO** posted a video to his story. The video displayed a still picture with rap lyrics over the picture. The picture displayed someone in the driver's seat of a Chrysler sedan. The individual has a large amount of 100-dollar bills laid out across his lap. The cash appears to be similar to the cash ATF used to purchase the 11 firearms from **DELGADO** the day prior. In the center console of the vehicle, the picture displays three Glock pistols and one teal

colored SCCY pistol. The pistols appear like those purchased from **FUENTEZ**. **FUENTEZ's** post appeared to show an individual in the front passenger seat of a vehicle. The individual has what appears to be the same or similar 100-dollar bills laid in a similar fashion across their lap. The individual then displays a plastic bag with three Glock pistols and a SCCY pistol. Further, the video has three Mexico flags over the top of the video. The UC told **FUENTEZ** he intended to bring the firearms to Mexico.

11. Investigators followed **FUENTEZ** and **DELGADO** to the deal location. **FUENTEZ** sold the UC five pistols in exchange for $3,250. **DELGADO** remained in the vehicle during the transaction. A query of the purchased firearm serial numbers revealed one of the firearms was stolen the night prior. The UC asked FUENTEZ if the pistol was stolen. **FUENTEZ** replied, "Not too positive on that one Pa" "Might be not goin to lie". **FUENTEZ** further told UC he had additional firearms ready for purchase.

12. The UC continued communicating with **FUENTEZ** and **DELGADO** separately. **DELGADO** told the UC, "Aye me n Glocks (**FUENTEZ**) r locked in with each other" "Trynna get u Wtv we can out here" which is believed to mean **DELGADO** and **FUENTEZ** were conspiring to traffic firearms together. They were attempting to gather firearms to sell the UC. **DELGADO** went on to say they had 10 firearms to sell the UC. The UC asked if **FUENTEZ** would be bringing firearms as well. **DELGADO** replied, "Na we splitting it" "Together we got 10 for u". Communication continued over the next several days. **DELGADO** attempted to negotiate prices for firearms he intended to sell. **DELGADO** said, "I feel u bro jus im splitting it wit Glocks (**FUENTEZ**) to" in reference to the profit he would make from the deal with the UC. The UC again said he would bring the firearms to Mexico after the deal. A meet was planned for May 1, 2025.

13. On May 1, 2025, the ATF intercepted **DELGADO** and **FUENTEZ** along with a third man on their way to complete the transaction with the UC. **DELGADO** and **FUENTEZ** were found in possession of the ten firearms which had been negotiated

4

       for sale to the UC. Of these ten firearms, three were confirmed to have been stolen.

14. Also on May 1, 2025, the ATF executed search warrants at the residence of **DELGADO** and **FUENTEZ**. These search warrants resulted in the seizure of an additional five firearms, which are currently being investigated.

15. In summary, **DELGADO** and **FUENTEZ** conspired together to sell the UCs a total of 39 firearms with the belief the firearms were being brought to Mexico. Eight firearms were reported stolen through NCIC. An additional five firearms were seized as part of search warrants executed on the residences of **DELGADO** and **FUENTEZ**. **DELGADO** further sold one Glock pistol along with a machine gun conversion device. A check of the Nation Firearms Registration and Transfer Record (NFRTR) revealed that neither **DELGADO** nor **FUENTEZ** have any National Firearms Act (NFA) firearms registered to them, as would be required to lawfully possess a machinegun.

FEDERAL CRIMINAL VIOLATIONS

16. Based on the above facts, your affiant believes that there is probable cause that, between on or about April 1, 2025 to on or about May 1, 2025, in the Western District of Texas, **Albert DELGADO** and **Hector FUENTEZ** knowingly conspired to traffic firearms by selling firearms with the belief the firearms would later be smuggled into Mexico in violation of 18 U.S.C. Section 933, pertaining to the trafficking of firearms.

17. The maximum penalty for violating 18 U.S.C. § 933 is up to 15 years in prison, up to 3 years of supervised release, a fine of up to $250,000, and a $100 mandatory special assessment. *See* 18 U.S.C. § 924(a)(2); 18 U.S.C. § 3583(b)(2); 18 U.S.C.

§ 3571(b)(3); 18 U.S.C. § 3013(a)(2)(A).

_____
DANIEL HUBER
Digitally signed by DANIEL HUBER
Date: 2025.05.01 16:25:31 -05'00'

Daniel Huber

Bureau of Alcohol, Tobacco, Firearms, and Explosives

SWORN TELEPHONICALLY ON THIS __1st__ DAY OF MAY, 2025.

_____

HONORABLE JUDGE RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE

6